# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL F. BROCK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-341-DBH |
| | ) | |
| COLLEEN HILTON AND | ) | |
| CITY OF WESTBROOK, | ) | |
| | ) | |
| Defendants | ) | |

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case requires me to interpret the Charter of the City of Westbrook as it affects the Fire Department Chief's job tenure. Because the provisions on tenure are facially confusing and because the Mayor consulted legal counsel before acting, I find that she is entitled to qualified immunity on the only federal claim asserted against her. I also conclude, however, that the facially confusing provisions do in fact provide continuous tenure (not just a renewable one-year appointment) for the Fire Chief, especially when viewed in the context of how they were adopted by the Maine Legislature and the voters of Westbrook. That tenure amounts to a contract and property interest under state law that deserves Fourteenth Amendment due process protection before it can be taken away.

**PROCEDURAL POSTURE**

When the defendant Colleen Hilton became Mayor of the City of Westbrook, she dismissed the Fire Department Chief, the plaintiff, Daniel Brock. Brock filed this lawsuit against Mayor Hilton and the City of Westbrook in state court. He claimed that he had continuous tenure as Fire Chief and that they deprived him of his property interest in continued employment, without due process of law, in violation of the Fourteenth Amendment to the United States Constitution and section 1983 of Title 42 of the United States Code. Compl. at 6-7 (Docket Item 2-1). Brock also alleged three state law claims—breach of contract, estoppel, and defamation—against Westbrook alone. Compl. at 7-9. The defendants removed the lawsuit to this court. Notice of Removal of Defs. (Docket Item 1).

After the completion of discovery, the defendants moved for summary judgment on all claims. Defs.' Mot. for Summ. J. at 4-5 (Docket Item 6). I held oral argument on the motion for summary judgment on April 28, 2011. At oral argument, the lawyers for the plaintiff and the defendants provided me with additional materials that they requested I consider in ruling on the motion for summary judgment. Because neither party objected to the other party's submissions, I will consider the materials submitted at oral argument as part of the summary judgment record. See Court Ex. List from Oral Arg. (Docket Item 24).

**FACTUAL BACKGROUND**

I state the facts in the light most favorable to the plaintiff, the party opposing summary judgment.

Prior to Brock's becoming Fire Chief on January 6, 2009, female firefighters in Westbrook's Fire Department filed sexual harassment complaints with the Maine Human Rights Commission. Defs.' Statement of Material Facts ("DSMF") ¶¶ 8, 24; Pl.'s Opposing Statement of Material Facts, with Additional Facts Not in Dispute ("PSMF") ¶¶ 8, 24. Brock was aware of the complaints of sexual harassment through media reports when he accepted the Fire Chief position. DSMF ¶ 28; PSMF ¶ 28. In June 2009, during Brock's tenure as Fire Chief, Westbrook retained the Center for the Prevention of Hate Violence "to reduce existing tensions" within the Fire Department and "to create a more welcome climate for female firefighters and EMTs." DSMF ¶¶ 26-27; PSMF ¶¶ 26-27.

On November 3, 2009, a new Mayor, the defendant Hilton, was elected. DSMF ¶ 34; PSMF ¶ 34. During her campaign for mayor, Hilton spoke with citizens of Westbrook who were concerned about the claims of sexual discrimination against Westbrook. DSMF ¶ 35; PSMF ¶ 35. After the election, Hilton met with City Administrator Jerre Bryant, who briefed her on the issues in the Fire Department. DSMF ¶ 37; PSMF ¶ 37. She also met personally with Brock. DSMF ¶¶ 40, 45; PSMF ¶¶ 40, 45.

Hilton personally reviewed Westbrook's Charter and concluded that it gave her power to appoint city department heads on an annual basis. DSMF

3

¶ 38; PSMF ¶ 38. After the election, she confirmed with Bryant and with Westbrook's lawyer, Attorney William Dale, the accuracy of her understanding of the mayor's appointment powers, "including the right to [] appoint the Fire Chief on an annual basis." DSMF ¶ 39.[1]

On January 4, 2010, the day of her inauguration, Hilton signed a letter to Brock informing him that he was "being laid off" from his position, effective upon Hilton's "inauguration as Mayor tonight." DSMF ¶ 53; Defs.' Reply to Pl.'s Opposing Statement of Material Facts ¶ 101; PSMF ¶¶ 53, 101; Ex. E to Aff. of Jerre Bryant (Docket Item 8-5).

## ANALYSIS

Westbrook claims that it is entitled to summary judgment because the Westbrook Charter gives its Fire Chief only a one-year term of employment, ending on the inauguration of the new Mayor. Mayor Hilton claims summary judgment on that basis and on the basis of qualified immunity for any personal liability.

### *Section 1983 Claim against Westbrook*

Brock claims that Westbrook violated his Fourteenth Amendment right to procedural due process by dismissing him as Fire Chief without a hearing. That right attaches when someone is deprived of a "property" interest, and Brock maintains that he had a property interest in his continued employment as Fire Chief of Westbrook. "It is well established that a public employee has a

---

[1] Brock "admits that Hilton received the stated advice" in his opposing statement of material facts. PSMF ¶ 39.

4

constitutionally protected property interest in his continued employment when he reasonably expects that his employment will continue." King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997). Whether a public employee has a constitutionally protected property interest is a matter of state law. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Perkins v. Bd. of Dirs., 686 F.2d 49, 51 (1st Cir. 1982).

In Barber v. Inhabitants of the Town of Fairfield, 460 A.2d 1001 (Me. 1981), the Maine Law Court held that "'[a] property interest in public employment can be created by a statute or ordinance that restricts the grounds upon which an employee may be discharged.'" Id. at 1005 (quoting Lovejoy v. Grant, 434 A.2d 45, 50 (Me. 1981)). Under Maine statutory law, fire chiefs are appointed for an indefinite term "[u]nless otherwise provided by contract, charter or ordinance." 30-A M.R.S.A. § 3153. Here, the Charter of the City of Westbrook addresses the job tenure of the Westbrook Fire Chief.

Westbrook claims that "the Charter clearly limits the position of fire chief to a one-year term," and that the Mayor merely declined to reappoint the Chief to another annual term. Defs.' Mot. for Summ. J. at 6, 9. Brock argues that the Fire Chief position is permanent, absent his death, retirement, or removal for good and sufficient cause. Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6 (Docket Item 13).

Before 1967, the Westbrook Charter provided for the appointment of certain "administrative officers" and included "chief engineer of the fire department" among them. P. & S.L. 1907, ch. 257, § 1(30), amended by

P. & S.L. 1957, ch. 134, § 5. They were to "be appointed on the first Monday of January, annually, or as soon as may be thereafter, and . . . shall hold their respective offices for the term of one year, from the first Monday of January, unless sooner removed." Id. That is the provision on which Westbrook relies for its argument that Brock had only a one-year term.

In 1967, a new section was added to the Westbrook Charter, Section 19-A. P. & S.L. 1967, ch. 112. That section deals extensively with the position of Westbrook Fire Chief and provides:

> The chief of the fire department shall be appointed by the mayor, with approval of two-thirds (2/3) of the city council. The chief shall hold such office until retirement, resignation or death, or removal for good and sufficient cause, on complaint of the mayor, such complaint being sustained by a majority vote of the full council.
>
> Upon the death, resignation or removal from office of such appointee, a new appointment shall be made to fill such vacancy as soon as practicable in accordance with this section, but the mayor may fill such vacancy by an appointment, pro tem, for a period not in excess of six (6) months, which term will expire when such new appointment is made as provided for.
>
> Such officer shall perform all duties prescribed by the laws of this state and city ordinances for his office and such other duties, not inconsistent with the nature of this office, as the mayor and city council may from time to time prescribe.

Id.; Westbrook Charter, § 19-A (Docket Item 8-1). But the previous Westbrook Charter provision concerning the Chief Engineer of the Fire Department and his/her job tenure was not repealed. See Westbrook Charter, § 30(V). Westbrook argues that the job tenure provision of Section 19-A therefore applies only in situations where an appointee retires, resigns, dies, or is

6

removed within the one-year appointment, "and not in a situation where he is simply not re-appointed at the end of his term." Defs.' Mot. for Summ. J. at 10-11; Defs.' Reply Mem. in Support of Mot. for Summ. J. at 3-4 (Docket Item 20).

These provisions are facially contradictory. Read in isolation, Section 19-A appears to grant the Fire Chief continuous tenure. Read in isolation, Section 30 appears to give the Fire Chief (in 1907 terminology, "chief engineer") a one-year term of employment. They cannot be reconciled in the manner Westbrook proposes, namely, that Section 19-A applies only where the Fire Chief is removed, dies, retires, or resigns during his one-year term. There would be no reason for the Charter to provide that the Fire Chief "shall hold . . . office until retirement, resignation or death," Westbrook Charter, § 19-A, if the Fire Chief actually holds office for only an annual term.

The legislative history of the Charter supports the conclusion that the Maine Legislature and the Westbrook voters intended to change the Charter's one-year Fire Chief appointment to something longer lasting. In 1967, when the Maine Legislature enacted the private and special law that added Section 19-A to the Westbrook Charter, P. & S.L. 1967, ch. 112, the Committee on Legal Affairs of the Maine House of Representatives added the word "permanent" to the title of that law ("An Act Relating to Appointment, Duties and Tenure of Permanent Chief of Fire Department of City of Westbrook") and also placed the word "permanent" in the language of the ballot question by which the voters of Westbrook would decide whether to adopt the 1967 change.

Committee Amendment "A" to H.P. 677, L.D. 949 ("Bill, 'An Act Relating to Appointment, Duties and Tenure of Chief of Fire Department of City of Westbrook.'"). Thus, the ballot question ultimately presented to the Westbrook voters read: "Shall the Act Relating to Appointment, Duties and Tenure of Permanent Chief of Fire Department of City of Westbrook, passed by the 103rd Legislature, be accepted?" P. & S.L. 1967, ch. 112.

In construing Section 19-A, I examine the wording that the Legislature chose for the ballot question. See Opinion of the Justices, 283 A.2d 234, 235 (Me. 1971) (in construing a constitutional amendment, "we cannot examine the amendment apart from the question placed before the voters when the amendment was adopted by referendum").[2] The ballot question refers to a "Permanent Chief of [the] Fire Department of [the] City of Westbrook." P. & S.L. 1967, ch. 112. In interpreting the Charter, I do not rely on the change to the title of the Act, but I do take into account the addition of the word "permanent" to the referendum question and the Westbrook voters' ultimate approval of the Charter amendment through that ballot language.

A newspaper account of the proposed charter amendment published before the referendum confirms that the amendment was presented to the voters as making the position of Fire Chief permanent. See Court Ex. No. 3 (Docket Item 24).[3] The article, published in the local paper, *The Westbrook American*, said that the charter change would "giv[e] the Westbrook fire chief

---

[2] This decision is not binding precedent, but it is indicative of how Maine Justices approach the interpretation of measures passed by referendum.

[3] Sharon Wires, *Rosenblad Will Vote Yes On Fire Chief*, THE WESTBROOK AMERICAN, Oct. 18, 1967, at 1, 20.

permanent tenure." Id. It also explained that "the part-time fire chief is . . . presently given no tenure" and is therefore "totally dependent on the party in power." Id.[4]

It is true that the drafters of Section 19-A failed to repeal the portion of Section 30 that calls for the annual appointment of the Chief Fire Engineer.[5] Given the other language and the history of the 1967 amendment to Westbrook's Charter, however, this can only be explained as a legislative oversight (perhaps because of the differing terminology, "chief engineer").

I conclude that Westbrook's Charter provides continuous tenure for the Fire Chief of Westbrook, a state-created property interest within the meaning of the Fourteenth Amendment. Summary judgment is therefore **DENIED** to the City of Westbrook on the 1983 claim.

***Breach of Contract and Estoppel***

The parties agree that the breach of contract and estoppel claims rise and fall with the section 1983 claim for summary judgment purposes.[6]

---

[4] See Jane S. Schacter, *The Pursuit of "Popular Intent": Interpretative Dilemmas in Direct Democracy*, 105 Yale L.J. 107, 131 (1995) ("media communications and political advertising are the most important sources shaping how voters understand the initiative proposals on which they are asked to vote"). I do not rely on the newspapers articles published *after* the election that reported that the voters had made the position of Fire Chief in Westbrook permanent. See Norman Fournier, *Westbrook Elects Saunders Mayor*, PORTLAND PRESS HERALD, Nov. 8, 1967, at 1 ("Voters also approved a city charter change which will take the fire chief's job out of politics and make it permanent."); *Westbrook And Falmouth Republicans Carry It Off*, EVENING EXPRESS, Nov. 8, 1967, at 14 ("Westbrook voters also approved a change in the city charter which would make the fire chief's position a permanent one.").

[5] When the Legislature amended the Westbrook Charter in 1957 to provide that the Chief of Police would hold office until he retired, resigned, or was removed for good and sufficient cause, it did remove "city marshal" from the list of annual appointments. P. & S.L. 1957, ch. 134, §§ 1, 5.

[6] Defs.' Reply Mem. in Support of Mot. for Summ. J. at 6 (Docket Item 20) ("Plaintiff's claims for breach of contract and estoppel are entirely duplicative of their section 1983 claims. As a result, the parties appear to agree that the resolution of the contract claims will rise and fall on
*(continued next page)*

Therefore, I **DENY** summary judgment on those Counts against the City of Westbrook.

*Qualified Immunity*

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled to qualified immunity, the First Circuit has adopted a two-part test: (1) whether the facts alleged or shown "make out a violation of a constitutional right," and (2) "whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson, 129 S. Ct. at 815-16).

I have concluded that the Charter gave Brock a property interest in his position as Fire Chief. Accordingly, the first part of the qualified immunity test is satisfied: on summary judgment, Brock's facts make out a violation of a constitutional right.

The second part of the qualified immunity analysis has two aspects: whether the law was clear at the time the defendant allegedly violated the plaintiff's constitutional rights; and whether a reasonable official would have understood that his or her conduct was unlawful under the particular

---

the Court's interpretation of the City Charter."). At oral argument, the plaintiff's counsel said she agreed the claims rise and fall together.

circumstances of the case. Maldonado, 568 F.3d at 269; Lopera v. Town of Coventry, 2011 U.S. App. LEXIS 6757, at *14 (1st Cir. Apr. 1, 2011). The "dispositive inquiry" is whether it would have been clear to a reasonable official that his or her conduct violated the plaintiff's constitutional rights. Barton v. Clancy, 632 F.3d 9, 22 (1st Cir. 2011). See also Lopera, 2011 U.S. App. LEXIS 6757, at *14 ("Together, these two factors ask whether a reasonable [official], similarly situated, would have believed that his conduct did not violate the Constitution.").

The provisions of Westbrook's Charter on the tenure of its Fire Chief are facially confusing. It is undisputed that Mayor Hilton personally reviewed the Charter and then consulted with both the City Administrator and the City's lawyer on its meaning. DSMF ¶¶ 38-39; PSMF ¶¶ 38-39. Both the City Administrator and the City's lawyer confirmed her understanding that as Mayor she had the right to appoint the Fire Chief on an annual basis. DSMF ¶ 39; PSMF ¶ 39.

It is true that "[r]eliance on advice of counsel alone does not per se provide defendants with the shield of immunity." Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 235 (1st Cir. 2007). However, the First Circuit has said that "the fact of the consultation and the purport of the advice obtained should be factored into the totality of the circumstances and considered in determining the [official's] entitlement to qualified immunity." Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004).

In Cox v. Hainey, a false arrest case, the First Circuit held that it was proper for the district court to consider the legal opinion of a prosecutor in assessing the objective reasonableness of an officer's actions, because "an objectively reasonable officer would have taken the prosecutor's opinion into account in deciding whether to make the arrest." Id. at 36. Here, too, "the advice that [Mayor Hilton] received from [Westbrook's lawyer] was of the kind that an objectively reasonable [official] would be free to consider reliable." Id. There is nothing in the record that suggests bad faith on her part or on the part of the city employee and attorney, and nothing suggests that she gave them less than full information. See id. (if an officer knowingly withholds material facts from a prosecutor, reliance on prosecutor's opinion would not be objectively reasonable).[7]

This case is also distinguishable from Borges Colon v. Roman-Abreu, a First Circuit case affirming the district court's denial of qualified immunity for a mayor, despite testimony by the mayor that he relied on advice of his human resources director and counsel when he reorganized his administration and laid off thirty-six career employees and one non-career employee. See Borges Colon v. Roman-Abreu, 438 F.3d 1, 6, 17, 19 (1st Cir. 2006). In Borges Colon, the human resources director testified at trial that she did not in fact give the mayor the advice on which he claimed to have relied, and the attorney did not

---

[7] At oral argument, Brock's lawyer attempted to distinguish Cox by arguing that advice given by private counsel should have less weight than advice given by a government lawyer. See Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 236 (1st Cir. 2007) (distinguishing advice of Puerto Rico's chief legal officer from "advice from private counsel, who may have financial incentives to provide exactly the advice the client wants"). There is no suggestion of such motivating financial incentives here.

testify. Id. at 17.  On those facts, the First Circuit found that "a reasonable jury could conclude that [the mayor's] testimony was deliberately untrue." Id. There is no factual dispute here over what advice Mayor Hilton received from the City Administrator and the City's attorney.  DSMF ¶ 39; PSMF ¶ 39. Furthermore, unlike in Borges Colon, there is no allegation or evidence that Mayor Hilton acted in bad faith.  See Borges Colon, 438 F.3d at 16-17 (finding that there was evidence that the mayor had discriminated against the terminated employees based on their political affiliation).

In its latest pronouncement on the doctrine of qualified immunity, the First Circuit stated that qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Lopera, 2011 U.S. App. LEXIS 6757, at *14-15 (quoting Morse v. Frederick, 551 U.S. 393, 429 (2007)). The facts here establish neither that the Mayor was incompetent nor that she knowingly violated the law.

Therefore, I conclude that Mayor Hilton's conduct was objectively reasonable as a matter of law and that she is entitled to qualified immunity. On the only count asserted against her, I **GRANT** summary judgment in her favor.

*Defamation*

The plaintiff has disclaimed his defamation claim against Westbrook, and summary judgment is therefore **GRANTED** to Westbrook on that claim.

13

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. I **GRANT** summary judgment as to Counts I and V of the Complaint and **DENY** summary judgment as to Counts II, III, and IV of the Complaint.

**SO ORDERED.**

**DATED THIS 23RD DAY OF MAY, 2011**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**